UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IGDALIAH GRAHAM,                         )
                                         )
                        Petitioner,      )     11 C 8720
                                         )
              vs.                        )     Judge Feinerman
                                         )
RANDY PFISTER, Warden,                   )
                                         )
                        Respondent.      )

### Memorandum Opinion and Order

Petitioner Igdaliah Graham, an Illinois inmate convicted of first-degree murder and

armed robbery, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 6. The

petition challenges only Graham's sentence for first-degree murder. After the Warden filed a

response, Doc. 11, the court requested supplemental briefing on Graham's Sixth Amendment

claim, Doc. 14, which the parties filed, Docs. 15, 17. Having reviewed the petition, the response,

the parties' supplemental briefs, and the state court record, Doc. 12, the court denies the petition

but issues a certificate of appealability on Graham's Sixth Amendment claim.

### Background

The facts of Graham's crimes are undisputed. In June 1993, Graham participated in a

carjacking in which the driver was shot and killed. The Appellate Court of Illinois, which is the

last state court to consider Graham's case on the merits, described the pertinent facts as follows:

> Defendant does not contest the sufficiency of the evidence to support his
> conviction, which arose out of the fatal shooting and armed robbery of a
> young man who was sitting in his car talking with his fiancee, Jacqueline
> Porter. Briefly stated, the evidence produced at trial revealed that in the early
> morning hours of June 11, 1993, Porter and the [murder] victim [a man named
> Pitman] were sitting in the victim's car, which was parked outside of
> Eckersall Park on 82nd Street in Chicago. The couple had been talking about
> their upcoming marriage and the birth of their child for approximately 30

minutes when Porter noticed three men walking down the street. Several
minutes later, she saw the same three men walking back down the street in the
opposite direction.

About three to four minutes later, Porter heard a man tapping on the
driver's side window of the car with a gun and telling the victim to get out of
the car. As the victim was getting out of the car, defendant grabbed Porter
and "slammed" her up against the back passenger-side window. Porter looked
defendant "dead in the face," told him she did not see his face and then
covered her face with her jacket. She yelled the victim's name and the victim
said, "[M]an that's my woman, she's pregnant." Defendant asked Porter for
her wallet, told her to lie on the ground and then got in the passenger-side of
the car.

While lying face down on the ground, Porter heard the other offender
ask the victim for the car keys. The victim told him they were in the car and
the offender said, "I told you, don't move." Porter then heard a single gunshot
and the car drove away. Porter ran over to the victim, who had blood coming
from his mouth. She carried him to the other side of the street, laid him in the
grass and ran for help. She was eventually able to flag down a police car and
shortly thereafter, an ambulance arrived at the scene. The victim was
transported to the hospital, where he was later pronounced dead. The autopsy
revealed that the victim died from a gunshot wound to the neck.

*People v. Graham*, No. 1-97-0417, slip op. at 1-3 (Ill. App. Jul. 13, 1998) (reproduced at Doc.

12-1 at 1-3). At trial, Graham did not deny that he had participated in the carjacking and that his

accomplice had murdered the driver; rather, he "testified that he was responsible for stealing the

car and robbing Porter, but not for murdering the victim." Doc. 12-1 at 4. The jury convicted

Graham of first degree murder on an accountability theory and also of two counts of armed

robbery. *Id*. at 5.

The state trial court sentenced Graham to concurrent terms of 75 years for the murder and

30 years for each of the armed robberies. *Id*. at 6. At the time, Illinois law stated in relevant part

that "a sentence of imprisonment … for first degree murder … shall be not less than 20 years and

not more than 60 years." 730 ILCS 5/5-8-1(a) (1994). Illinois law further stated that a term "not

less than 60 years and not more than 100 years" could be imposed for first degree murder if any

of the aggravating factors listed in 730 ILCS 5/5-5-3.2(b) (1994) "were found to be present."

730 ILCS 5/5-8-2(a)(1) (1994).  One aggravating factor, which will be called the recidivism

factor, applied where a defendant convicted of first degree murder had previously been convicted

of certain offenses.  730 ILCS 5/5-5-3.2(b)(7) (1994).  Another aggravating factor, which will be

called the brutal-or-heinous factor, applied where "the offense was accompanied by

exceptionally brutal or heinous behavior indicative of wanton cruelty."  730 ILCS 5/5-5-

3.2(b)(2) (1994).  As the Appellate Court of Illinois explained on Graham's post-conviction

appeal, "[t]he general sentencing range for first degree murder was 20 to 60 years in prison …,

which was extendable to 100 years when one of the seven factors enumerated in section 5-5-

3.2(b) … was present."  *People v. Graham*, No. 1-08-3651, 2011 WL 9669442, at *2 (Ill. App.

Jan. 19, 2011) (the slip opinion is reproduced in the record, Doc. 12-2 at 2-10, but all citations

will be to the version on Westlaw).

The transcript of the sentencing hearing makes clear that everybody—the prosecutor,

defense counsel, and the sentencing judge—assumed that Graham was eligible for an extended-

term sentence.  Doc. 12-7 at 172-182.  In concluding his presentation at the hearing, the

prosecutor stated: "I would ask that you sentence him to an extended term or something over the

maximum of sixty years."  *Id*. at 174.  During rebuttal, defense counsel did not dispute that

Graham was eligible for an extended-term sentence; rather, counsel urged the court to exercise

its discretion to decline to impose such a sentence.  *Id*. at 174-176.

In imposing an extended-term sentence of 75 years for first degree murder, the trial court

stated in relevant part:

> All right, this Court having considered all the evidence that I heard in
> the trial of this case, the same evidence that the jury heard and found you
> guilty of on the offense of first degree murder and the two counts of armed
> robbery of both victims.  Having considered that evidence and having
> considered all the information contained in this presentence investigation,
> what I heard, the aggravation, what I heard in mitigation in this matter, Mr.

Graham's own statement made in open Court; the Court is prepared to impose sentence.

In imposing sentence I am certainly considering the role played by this Defendant and the robbery of these two individuals and the role that was played in the robbery that resulted in the killing of one of those individuals. Though Mr. Graham did not fire the shot that killed Mr. Clinton, it's the same result as if he had fired the shot. He played an intentional role in this incident. … I'm also taking into consideration the criminal history of this Defendant. The Defendant has been previously convicted and sentenced on burglary charges, also possession of controlled substance charge, he's also been found delinquent on three separate occasions in Juvenile Court on various charges involving possession of a stolen motor vehicle, burglary and other property crimes. … In imposing sentence I'm also considering the particular acts involved, there was also great injury to the surviving victim, the victim of the armed robbery. … Mr. Graham, on the charge of first degree murder the Court will impose an extended term sentence of seventy-five years in the Illinois Department of Corrections.

*Id*. at 177-179. The sentencing court never expressly found that Graham was eligible for an extended-term sentence. The court did not explicitly reference the recidivism aggravating factor under section 5-5-3.2(b)(7), though it did mention that Graham had previously been convicted for burglary. Nor did the court explicitly reference the brutal-or-heinous aggravating factor under section 5-5-3.2(b)(2), though it did mention "the particular acts involved"—and by "the particular acts involved," the trial court plainly was referring to the murder, as immediately thereafter the court said that "there was *also* great injury to the surviving victim, the victim of the armed robbery." *Id*. at 179 (emphasis added). It is understandable that the sentencing court did not expressly state that Graham was eligible for an extended-term sentence; the point was undisputed, and judges need not make express rulings on uncontested matters.

Graham filed a motion to reduce sentence. Doc. 12-4 at 52-53. The motion argued, among other things, that "[n]o basis was given for the extended term sentence." *Id*. at 53. The trial court summarily denied the motion in an oral ruling. Doc. 12-7 at 184.

On direct appeal, Graham challenged the extended-term sentence.  As in the trial court, Graham did not dispute his eligibility for an extended-term sentence.  Addressing the recidivism and brutal-or-heinous aggravating factors, Graham's brief stated: "An extended term sentence may be imposed in situations where a defendant is convicted of murder[,] and has been convicted of a Class 2 … crime within ten years or where the offense was brutal and heinous.  730 ILCS 5/5-5-3.2(b)(2)[,] (7)."  Doc. 12-1 at 22.  Graham argued that the murder was not "brutal or heinous" under section 5-5-3.2(b)(2): "The instant case was not brutal and heinous, and Graham's 75-year extended term sentence cannot be justified on that basis. … This case does not merit an extended term based on its factual circumstances."  *Id*. at 24-25.  Graham conceded, however, that his burglary conviction made him eligible for an extended-term sentence under the recidivism factor in section 5-5-3.2(b)(7).  *Id*. at 22 ("defendant's criminal background makes him technically eligible for an extended term"), 48 (conceding "that Graham was eligible for an extended term sentence based on [his] Class two burglary conviction").  And then, noting correctly that *eligibility* for an extended-term sentence does not *require* the court to actually impose such a sentence, Graham argued that his extended-term sentence was an abuse of discretion because he was not the actual shooter, because his prior convictions were for nonviolent offenses, because he had expressed remorse, and for other reasons.  *Id*. at 22-28.

The state appellate court affirmed.  *Id*. at 1-10.  The appellate court's opinion reads, not surprisingly, as if the parties had assumed that Graham was statutorily eligible for an extended-term sentence.  The matter is referenced only briefly at the end of the court's opinion:

> After considering all the relevant factors, the [sentencing] court determined that defendant's actions justified imposing an extended-term sentence.  730 ILCS 5/5-5-3.2(b) (West 1996).  Defendant was sentenced to 75 years' imprisonment, which was well within the statutory range of possible sentences. … The trial court acted within the scope of its discretion when it sentenced defendant to 75 years' imprisonment.

*Id*. at 10. As with the sentencing court's explanation of Graham's sentence, the fact that the appellate court did not focus attention on Graham's eligibility for an extended-term sentence is not surprising, for Graham admitted his eligibility and argued only that the trial court had erred in deciding to actually impose such a sentence.

Graham then filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois. *Id*. at 53-63. The PLA was denied on December 2, 1998. *People v. Graham*, 706 N.E.2d 499 (Ill. 1998) (Doc. 12-1 at 64). Graham did not petition the United States Supreme Court for a writ of certiorari. Doc. 6 at 2.

Graham followed up with a *pro se* post-conviction petition, which again challenged the extended-term sentence. Doc. 12-4 at 95-106. The state trial court summarily dismissed the petition. *Id*. at 111. The state appellate court reversed and remanded for further proceedings. *People v. Graham*, No. 1-00-1657 (Ill. App. Jun. 12, 2001) (Doc. 12-2 at 1).

On remand, and now represented by counsel, Graham filed a supplemental post-conviction petition. Doc. 12-5 at 11-21. The supplemental petition argued that the sentencing court lacked a lawful basis to impose an extended-term sentence, and also that Graham's trial counsel was ineffective in failing to argue that Graham was ineligible for an extended-term sentence. *Id*. at 15-20. With respect to the first argument, the State responded that Graham was eligible for an extended-term sentence under both the recidivism factor and the brutal-or-heinous factor, and that "[t]he sentence was within the statutory range of possible sentences." *Id*. at 46-47 (citing 730 ILCS 5/5-5-3.2(b)(2), (7)). With respect to the second argument, the prosecutor responded that trial counsel did in fact argue in the motion to reconsider sentence that there was no basis for an extended-term sentence. *Id*. at 49. The post-conviction trial court denied Graham's challenge to his sentence on *res judicata* grounds. *Id*. at 63. And the court denied

Graham's ineffective assistance claim, reasoning that trial counsel filed a motion to reconsider

the sentence—which, as noted above, argued that "[n]o basis" was given for imposing an

extended-term sentence—and that "even had counsel immediately objected to the imposition of

an extended term, there is scant likelihood the objection would have changed petitioner's

sentence." *Id*. at 65.

On appeal, Graham argued that the extended-term sentence was unlawful because none

of the aggravating factors under 730 ILCS 5/5-5-3.2(b) were present and none had been found by

the sentencing court; the bulk of Graham's two briefs maintained that this violated Illinois law,

and he summarily added at the end of both briefs that this violated due process as well. Doc. 12-

2 at 11-50, 84-91. The appellate court affirmed. Agreeing with Graham that "the trial court did

not state a particular eligibility factor for the imposition of the extended term," the appellate

court nonetheless held that "the lack of a specific finding by the trial court did not render an

extended term sentence void where 'we can ascertain from the comments of the court that it did

find an extended term sentence appropriate for defendant.'" *Graham*, 2011 WL 9669442, at *2

(quoting *People v. Sterling*, 828 N.E.2d 1264, 1282 (Ill. App. 2005)). On that point, the court

ruled that "[t]he record here clearly establishes such intent [on the part of the sentencing judge]

where, at sentencing, the trial court specifically stated that 'on the charge of first degree murder,

the court will impose an extended term sentence' of 75 years in prison." *Ibid*.

The appellate court then noted that the parties' briefs on post-conviction appeal agreed

"that the only statutory factor relevant to the imposition of an extended term sentence here

authorizes such term where defendant's commission of a felony is 'accompanied by

exceptionally brutal or heinous behavior indicative of wanton cruelty.'" *Id*. at *3. With respect

to the brutal-or-heinous factor, the court observed: "At the time of defendant's conviction and

sentence, the trial court had the discretion to determine whether a crime was brutal or heinous

and indicative of wanton cruelty. It is within the trial court's discretion to determine what

constitutes exceptionally brutal [or] heinous behavior indicative of wanton cruelty for the

purpose of imposing an extended term sentence ...." *Ibid.* (internal quotation marks omitted,

alteration in original). The appellate court concluded:

> Here, the record is replete with references to the applicability of an
> extended term, as argued by the State, as conceded by defense counsel at trial
> and as expressly stated by the court at sentencing, where the court stated that
> "on the charge of first degree murder, the court will impose an extended term
> sentence" of 75 years in prison. Defendant did not seek clarification of the
> specific reason or reasons for the extended term at his sentencing hearing.
> Although defendant apparently filed a motion to reduce his sentence, that
> motion is not included in the record on appeal, and the report of proceedings
> is not illuminative on this point because defense counsel waived argument and
> stood on the contents of the motion.

> Furthermore, in challenging his sentence on direct appeal, we
> specifically held:

> > "After considering all the relevant factors, the [trial] court determined
> > that defendant's actions justified imposing an extended term sentence
> > [citing to section 5-5-3.2(b)]. Defendant was sentenced to 75 years'
> > imprisonment, which was well within the statutory range of possible
> > sentences [citing section 5-8-2, under which an extended term sentence
> > of between 60 and 100 years can be imposed]. It is not our function to
> > serve as a sentencing court, and we will not substitute our judgment
> > for that of the trial court merely because a different sentence could
> > have been imposed. [Citation.] The trial court acted within the scope
> > of its discretion when it sentenced defendant to 75 years'
> > imprisonment." *Graham*, No. 1-97-0417, at 10.

> Defendant pulled Porter from a car, demanded money, and ordered her
> to lie face down. Defendant was legally accountable for the deeds of his co-
> offender, Capers, who shot Pittman in the neck, killing him, and defendant's
> failure to fire the fatal shot is of no import because a defendant convicted on
> an accountability theory can receive an extended term sentence under section
> 5-5-3.2(b)(2) for the brutal or heinous behavior of his co-offender. See
> *People v. Rodriguez*, 229 Ill.2d 285, 292-93 (2008). Capers shot Pittman in
> the neck at close range, leaving him to die in the street while his pregnant
> companion watched.

> In light of this record and the relevant law, defendant's sentence was
> statutorily authorized and does not fall within the definition of a void
> judgment. Accordingly, the grant of the State's motion to dismiss his post-
> conviction petition is affirmed.

*Id*. at *3-4 (alterations in original). To summarize, the appellate court held that the sentencing court did not explicitly set forth the aggravating factor(s) that justified Graham's extended-term sentence, that Illinois law does not require a sentencing court to do so where the record makes clear that the court intended to impose an extended-term sentence, that the record made clear that the sentencing court in Graham's case intended to impose an extended-term sentence, and that the sentencing court, albeit implicitly, had justified an extended-term sentence under section 5-5-3.2(b)(2) on the ground that the murder was brutal or heinous.

Graham filed a *pro se* PLA. Doc. 12-3 at 8-25. He argued, among other things, that the post-conviction appellate court made a finding of fact that the murder was "brutal or heinous," and that by making that finding of fact, the appellate court violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In support, Graham stated:

> [T]he Appellate Court disregarded the ruling in Apprendi and the language of
> the statute as it exist[ed] in 2011, and assumed the role of the trier of the fact.
> Petitioner is not asking this court to apply the ruling in Apprendi retroactively.
> However the Appellate Court made such a finding of fact 11 years after the
> Apprendi ruling. And the Appellate Court's finding of fact is what
> substantiates the imposi[t]ion of an extended term sentence, and it replaces the
> absence of such a finding of fact.

Doc. 12-3 at 24. The Supreme Court of Illinois denied the PLA. *People v. Graham*, 955 N.E.2d 475 (Ill. 2011) (Doc. 12-3 at 26). This petition for a writ of habeas corpus followed.

### Discussion

Graham seeks habeas relief on four grounds. Doc. 6 at 5-8. Although the Warden contends that Graham procedurally defaulted all four grounds, Doc. 11 at 4, the court will address each ground on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of

habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

## I.      State Law Claims

For his first, second, and fourth grounds, Graham argues: (1) that the sentencing court abused its discretion by considering the "great injury" to Potter in deciding whether to impose an extended-term sentence; (2) that the sentencing court imposed an extended-term sentence without "making the specific finding of fact that one of the aggravating factors listed in 730 ILCS 5/5-5-3.2(b)"; and (4) that the murder was not brutal or heinous within the meaning of the brutal-or-heinous aggravating factor.  Doc. 6 at 5-6, 8.  All three grounds assert violations of the Illinois sentencing statute, and therefore are not cognizable on federal habeas review.  *See* 28 U.S.C. § 2254(a) ("a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*") (emphasis added); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) ("an error in … the application of state sentencing rules … does not present a cognizable claim for federal habeas relief").

Graham does briefly invoke the due process and equal protection protections of the Fourteenth Amendment in pressing the second and fourth grounds.  Doc. 6 at 5-6.  A claim that the state courts misapplied state law is cognizable on federal habeas review if the "petition draws enough of a connection between [the petitioner's] right to due process [under the United States Constitution] and the [state courts'] (alleged) evidentiary and instructional errors."  *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004).  Graham's petition falls well short of that standard.

Graham merely asserts, in conclusory fashion, that the state courts' violation of Illinois sentencing law also violated his federal constitutional rights. Unlike the petition in *Perruquet*— which "articulated the theory of self-defense that [the petitioner] wished to pursue; … described the evidence (both excluded and admitted) that supported that theory; and … argued that preventing [the petitioner] from pursuing the theory of self-defense likely resulted in the conviction of an innocent person," and which therefore made "the basic rationale of [the petitioner's] due process argument … readily discernible," *ibid.*—Graham makes no effort, other than uttering the words "due process" and "equal protection," to actually connect the state courts' alleged departures from state law to the federal due process and equal protection guarantees. Doc. 6 at 5-8; *see Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995) ("'Due process' is such a ductile concept that phrase-dropping is the equivalent of no argument at all. A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument.") (citation omitted). He therefore has failed to articulate a cognizable federal claim on habeas review. *See Dellinger*, 301 F.3d at 764 (holding that the petitioner did not present a cognizable habeas claim where he argued that the state courts violated due process and equal protection by erroneously finding that he had inflicted "severe bodily injury" within the meaning of the Illinois sentencing statute); *see also Schweiner v. Foster*, 493 F. App'x 750, 751-52 (7th Cir. 2012) ("Schweiner's argument casts a claimed violation of state law—not cognizable on federal habeas review—as a federal due-process violation. Under the Due Process Clause, the prosecution must prove every element of a crime beyond a reasonable doubt, but the elements of the crime are defined by state law. Here, the state appellate court held that the supplemental jury instruction was a correct statement of Wisconsin law based on the facts of Schweiner's case. That conclusion ends our inquiry.");

*Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009) ("We agree with the State that Curtis is impermissibly attempting to use a petition for a writ of habeas corpus to press his preferred interpretation of Illinois law. We may not review state-court interpretations of state law.").

## II.    *Apprendi* **Claim**

Graham's one true federal claim is that the post-conviction appellate court violated *Apprendi* by making a factual finding that the murder was brutal or heinous as a predicate to ruling that an extended-term sentence was justified under section 5-5-3.2(b)(2). Doc. 6 at 6-7. *Apprendi* holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Accordingly, if the post-conviction appellate court indeed made a "fresh" factual finding that the murder was brutal or heinous, *Apprendi* would come into play. But if the post-conviction appellate court simply held that the sentencing court had predicated the extended-term sentence on its own brutal-or-heinous finding, there would be no viable *Apprendi* claim. (As explained below, there would be an *Apprendi* violation, but any federal habeas claim based on that violation would be *Teague*-barred.)

The post-conviction appellate court's opinion, particularly considered against the backdrop of the state court record as a whole, makes clear that the appellate court did not make its own brutal-or-heinous finding, but rather held that the sentencing court had made an implicit brutal-or-heinous finding in imposing an extended-term sentence. Recall the appellate court's observation that: "At the time of defendant's conviction and sentence, the trial court had the discretion to determine whether a crime was brutal or heinous and indicative of wanton cruelty. It is within the trial court's discretion to determine what constitutes exceptionally brutal [or] heinous behavior indicative of wanton cruelty for the purpose of imposing an extended term

sentence ….”  2011 WL 9669442, at *3 (internal quotation marks omitted, alteration in original).

This passage makes sense only if the appellate court concluded that the sentencing court had

made a brutal-or-heinous finding at sentencing.  If the appellate court did not believe that the

sentencing court had made a brutal-or-heinous finding, then it would have had no reason to

reference the sentencing court's discretion to make such a finding.

The appellate court acted reasonably in concluding that the sentencing court had made an

implicit brutal-or-heinous finding.  That the sentencing court made that implicit finding is

suggested by the court's reference to "the particular acts involved" in the murder.  Doc. 12-7 at

179.  That reference is admittedly oblique, but Graham's eligibility for an extended-term

sentence was undisputed at sentencing, so the sentencing court had no need to dwell on or even

explicitly mention the issue.  The proposition that the sentencing court made an implicit brutal-

or-heinous finding gains further support from Graham's brief on direct appeal, which addressed

the section 5-5-3.2(b)(2) brutal-or-heinous factor and argued at some length that Graham's

involvement in the murder did not qualify as brutal or heinous.  Doc. 12-1 at 24-26.  Why would

Graham address the brutal-or-heinous factor on appeal, if not for his understanding that the

sentencing court had implicitly relied on that factor in imposing an extended-term sentence?

True, Graham conceded that his burglary conviction made him eligible under the section 5-5-

3.2(b)(7) recidivism factor for an extended-term sentence, but Graham's argument that the

sentencing court abused its discretion in imposing an extended-term sentence would have been

much stronger had the appellate court on direct appeal concluded that only one aggravating

factor (recidivism) was present, not two (recidivism and brutal-or-heinous).

In ruling that the post-conviction appellate court reasonably concluded that the

sentencing court had made an implicit finding that the murder was brutal or heinous, this court is

mindful of the teaching of *Taylor v. Grounds*, 721 F.3d 809 (7th Cir. 2013), on the subject of

implicit state court findings. *Taylor* was a habeas case in which the Supreme Court of Illinois, in

rejecting the petitioner's Sixth Amendment conflict-of-counsel claim, held that the post-

conviction trial court had implicitly found (without expressly saying) that the petitioner's trial

counsel had credibly testified that the conflict did not adversely affect his representation of the

petitioner. *Id*. at 816-17. The Seventh Circuit held that the state supreme court unreasonably

concluded that the state trial court had rested its rejection of the petitioner's claim upon such a

credibility finding. *Id*. at 822. In so holding, the Seventh Circuit explained the circumstances

under which the state trial court can and cannot be assumed to have made an implied credibility

finding. "When competing testimony is presented on a single issue decided in the government's

favor, a federal habeas court can imply a credibility finding in favor of the government from the

state court's decision." *Id*. at 822 n.3 (citing *LaVallee v. Delle Rose*, 410 U.S. 690, 690-94

(1973) (per curiam)). By contrast, it cannot be assumed that the state trial court made an implied

credibility finding where "the resolution of [the petitioner's] claim required resolution of two

issues that were both contested at the [state] trial court level." *Ibid*.

      The post-conviction appellate court's conclusion in this case that the sentencing court had

made an implicit brutal-or-heinous finding falls on the permissible side of the line. By contrast

to the circumstances in *Taylor*, the pertinent issue faced by the sentencing court—whether

Graham was eligible for an extended-term sentence—was not even *disputed* by Graham. It is for

that reason that the sentencing court had no reason to explicitly find that Graham was so eligible;

the sentencing court instead focused on the only disputed issue, whether the circumstances

warranted a non-extended sentence despite Graham's eligibility for an extended-term sentence.

The fact that the sentencing court focused on that issue suggests that it had already determined,

along with the parties, that Graham was eligible for an extended-term sentence. The post-conviction appellate court's conclusion to that effect is particularly reasonable given what the court accurately described as a record "replete with references to the applicability of an extended term." 2011 WL 9669442, at *3. Again, the reasonableness of the appellate court's conclusion is confirmed by the fact that Graham came to the same conclusion on direct appeal, where he addressed the two pertinent aggravating factors, recidivism and brutal-or-heinous, and argued that he was eligible for an extended-term sentence under the first but not the second, which he would have done only if he understood the sentencing court to have relied on both factors in finding him eligible.

To say that the post-conviction appellate court's characterization of the sentencing court's oral sentencing ruling is reasonable is not to suggest that it is beyond dispute or even that it is the most persuasive characterization. But reasonableness is the only hurdle that must be cleared on habeas review. As the Seventh Circuit explained in *Taylor*: "For purposes of collateral review, we must defer to the Illinois Supreme Court's characterization of what the postconviction trial court found unless the petitioner presents clear and convincing evidence to overcome that presumption." 721 F.3d at 821, citing 28 U.S.C. § 2254(e)(1); *Parker v. Dugger*, 498 U.S. 308, 320 (1991) (holding that a state appellate court's "determination of what the trial judge found is an issue of historical fact," to which "a federal court on habeas review must give deference"); *Wright v. Walls*, 288 F.3d 937, 944 (7th Cir. 2002) ("a reviewing court's characterization of what the trial judge found is one of historical fact"). For the reasons given above, Graham has not established by clear and convincing evidence that the post-conviction appellate court was wrong in concluding that the sentencing court relied on the brutal-or-heinous factor in finding him eligible for an extended-term sentence.

It bears mention that the post-conviction appellate court did *not* conclude that the sentencing court had implicitly found Graham eligible for an extended-term sentence under the recidivism factor, section 5-5-3.2(b)(7). As the appellate court explained, the parties agreed on post-conviction appellate review "that the only statutory factor relevant to the imposition of an extended term sentence here authorizes such term where defendant's commission of a felony is 'accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty.'" 2011 WL 9669442, at *3. Because Graham had expressly conceded on direct appeal his eligibility for an extended-term sentence under the recidivism factor, it is unclear why the State dropped its reliance on that factor. Perhaps the State was convinced by Graham's argument in his initial post-conviction appellate brief (Doc. 12-2 at 27-28) that Graham's burglary conviction did not, in fact, satisfy section 5-5-3.2(b)(7).

Even if the burglary conviction did not make Graham eligible under the recidivism factor for an extended-term sentence, the sentencing court's error in relying upon that factor would have been an error of state law. Accordingly, if the post-conviction appellate court had concluded that the sentencing court relied on the recidivism factor as well as the brutal-or-heinous factor in finding Graham eligible for an extended-term sentence, Graham's *Apprendi* claim would fail—regardless of the brutal-or-heinous factor—because "an error in … the application of state sentencing rules … does not present a cognizable claim for federal habeas relief," *Dellinger*, 301 F.3d at 764, and because recidivism findings fall outside *Apprendi*'s scope altogether. *See Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998) (holding that the fact of a prior conviction is a sentencing factor that may be found by the sentencing judge and that need not be found by a jury beyond a reasonable doubt); *United States v. Elliott*, 703 F.3d 378, 381 (7th Cir. 2012) (observing that "*Almendarez-Torres* has remained good law even as the

[Supreme] Court in later decisions has recognized a defendant's right to a jury finding on other factors that expose the defendant to a longer sentence" and noting that *Apprendi* "expressly cited the fact of a prior conviction as an exception to the rule it stated"); *Calloway v. Montgomery*, 512 F.3d 940, 945 (7th Cir. 2008) (same). But the State did not press that argument on state post-conviction review, the post-conviction appellate court did not uphold Graham's sentence on that ground, and the Warden does not rely on the recidivism factor here, so the court will not deny habeas relief on that ground. *See Hill v. Werlinger*, 695 F.3d 644, 647 (7th Cir. 2012); *Canaan v. McBride*, 395 F.3d 376, 381-82 (7th Cir. 2005).

One final issue warrants discussion. The court parenthetically noted above that the sentencing court's imposition of an extended-term sentence based on its own brutal-or-heinous finding violated *Apprendi*—doubly so, as the finding was made neither by a jury nor under the reasonable doubt standard—but that any federal habeas claim based on that violation would be *Teague*-barred. The *Teague* non-retroactivity rule holds that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310 (1989); *see also Chaidez v. United States*, 655 F.3d 684, 688-89 (7th Cir. 2011). The Seventh Circuit has ruled that *Apprendi* is "not retroactive on collateral review," and therefore that "*Apprendi* … does not disturb sentences that became final before June 26, 2000, the date of its release." *Curtis v. United States*, 294 F.3d 841, 842, 844 (7th Cir. 2002).

Graham's conviction became final before June 26, 2000. "A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen*, 510 U.S. 383, 390

(1994). The Supreme Court of Illinois denied Graham's PLA on direct appeal on December 2,

1998. Because Graham did not file a certiorari petition with the United States Supreme Court,

his conviction and sentence became final when the 90-day deadline for filing a certiorari petition

elapsed in early March 1999, more than a year before *Apprendi* was issued. Accordingly,

*Teague* would bar any *Apprendi* claim directed at the sentencing court's imposition of the

extended-term sentence based upon its own brutal-or-heinous finding.[*]

## Conclusion

Because all of Graham's claims are without merit, his petition for a writ of habeas corpus

is denied. Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court

"must issue or deny a certificate of appealability [('COA')] when it enters a final order adverse

to the applicant." The applicable standard is as follows:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial
> showing of the denial of a constitutional right, a demonstration that ... includes
> showing that reasonable jurists could debate whether (or, for that matter, agree

---

[*] Contrary to the Warden's submission, Doc. 15 at 1-2, 6-7, *Teague* does not bar Graham's claim (which this court has rejected on the merits) that the sentencing court did not make an implicit brutal-or-heinous finding and that the post-conviction appellate court violated *Apprendi* by making its own brutal-or-heinous finding. Although Graham's conviction became final in March 1999, if the post-conviction appellate court violated *Apprendi* by making a new factual finding in 2011, eleven years after *Apprendi* was issued, then applying *Apprendi* to that violation would not violate *Teague*. Also unpersuasive is the Warden's argument that Graham procedurally defaulted his *Apprendi* claim by not presenting it on "one complete round of state court review." Doc. 11 at 10-11. The *Apprendi* claim arose from the post-conviction appellate court's opinion, and Graham raised that claim in the state supreme court in his post-conviction PLA. Doc. 12-3 at 12, 24-25. The Warden does not indicate what else Graham could possibly have done—file a second post-conviction petition in the state trial court asking it to overturn the appellate court's decision?—to preserve his *Apprendi* claim. Indeed, Illinois law allows an appeal from the state appellate court to the state supreme court where, as Graham alleges here, "a question under the Constitution of the United States arises for the first time in and as a result of the action of the Appellate Court." Ill. Sup. Ct. R. 317. Under these circumstances, there is no procedural default. *See Cottenham v. Jamrog*, 248 F. App'x 625, 634 (6th Cir. 2007) (rejecting the State's "one complete round" argument where "the Michigan Supreme Court was the first court in which [the petitioner] could have raised these issues, as the constitutional violation arose for the first time in the [state] court of appeals, not the trial court").

that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted); *see also Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011); *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

The court's denial of Graham's state law claims rely on settled precedent. The application of that precedent to Graham's state law claims, and the court's conclusion that Graham cannot federalize those claims merely by calling them due process or equal protection claims, do not present close or difficult questions, so a COA will not issue on the state court claims. A COA will issue on the *Apprendi* claim, not because the *Apprendi* issues themselves are difficult, but because reasonable jurists might disagree with: (1) this court's holding that the post-conviction appellate court reasonably concluded that the sentencing court had implicitly relied on the brutal-or-heinous factor in finding Graham eligible for an extended-term sentence; or (2) this court's holding, logically anterior to the holding just mentioned, that the post-conviction appellate court (a) actually concluded that the sentencing court had made an implicit brutal-or-heinous finding and (b) did not make its own "fresh" brutal-or-heinous finding in 2011 on post-conviction review. Thus, a COA is granted on this question: "Whether the Appellate Court of Illinois on post-conviction review violated the principles of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), or *Taylor v. Grounds*, 721 F.3d 809 (7th Cir. 2013), in the course of rejecting Graham's claim that the sentencing court failed to articulate a ground for finding him eligible for an extended-term sentence."

November 13, 2013

_____
United States District Judge

19